## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| KENNETH WARREN GEBHARDT, | Cause No. CV-21-126-GF-JTJ |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Kenneth Warren Gebhardt ("Gebhardt") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 2); (Doc. 7-1 at 6.) The Commissioner first denied Gebhardt disability benefits at the initial and reconsideration levels in 2016. (Doc. 2 at ¶ 4.) Administrative Law Judge Michele Kelley ("ALJ") issued an unfavorable decision on August 1, 2018. (*Id.* at ¶ 5.) The Appeals Council denied Gebhardt's request for review on April 22, 2019. (*Id.* at ¶ 6.) The Court remanded the Commissioner's decision for further proceedings on August 27, 2020. (Doc. 7 at 762.) The ALJ conducted another hearing on Gebhardt's application for disability

1

benefits on September 8, 2021, and issued an unfavorable decision on Gebhardt's application for the second time on September 28, 2021. (Doc. 7-1 at 6.)

Gebhardt filed an opening brief on April 13, 2022. (Doc. 12). Gebhardt asks the Court either to remand the decision of the ALJ for further proceedings or reverse for an award of benefits. (Doc. 2.)

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Gebhardt resides in Great Falls, Cascade County, Montana. 29 U.S.C. § 1391(e)(1); (*Id.*)

## PROCEDURAL BACKGROUND

Gebhardt filed a Title II application for a period of disability and disability insurance benefits on December 24, 2015. (Doc. 7 at 188.) Gebhardt alleges disability beginning on October 7, 2015. (*Id.*) The Court's previous Order reversing the ALJ's first unfavorable decision summarizes Gebhardt's disability application and the ALJ's first five-step analysis and disability determination. *Gebhardt v. Saul*, No. 4:19-cv-19-42-GF-BMM-JTJ, (D. Mont., Aug. 31, 2021).

The ALJ conducted further proceedings upon remand from the Court. The ALJ held a second hearing and issued a second unfavorable decision, again determining that Gebhardt was not disabled. (Doc. 7-1 at 24.) Gebhardt filed a second Complaint in this Court on December 16, 2021. (Doc. 2.)

2

## STANDARD OF REVIEW

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

3

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. § 416.920(e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. § 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. § 416.920(g).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## FACTUAL BACKGROUND

Gebhardt first filed a Title II application for a period of disability and disability insurance benefits on December 24, 2015. (Doc. 7 at 188.) An ALJ issued an unfavorable decision on this application on August 1, 2018, and the Court, as previously discussed, remanded that decision denying disability benefits on August 27, 2020. (*Id.* at 757.) Gebhardt meanwhile filed another application for disability benefits and received a favorable determination on June 24, 2020. (*Id.* at 744-45.) The Appeals Council vacated the June 2020, decision awarding benefits and remanded to the ALJ with instructions to consolidate the claims. (*Id.* at 775.) The ALJ held a hearing in Gebhardt's case on September 8, 2021. (*Id.* at 667.) The ALJ issued a decision on September 28, 2021. (Doc. 7-1 at 6.) The ALJ followed the five-step sequential process in reevaluating Gebhardt's claims. (*Id.* at 8.)

Step One: The ALJ found that Gebhardt had not engaged in substantial gainful activity.

Step Two: The ALJ identified that Gebhardt had several severe impairments: asthma, bilateral total knee arthroplasty, obesity, atrial fibrillation/coronary artery disease and cardiomyopathy, fibromyalgia, and carpal tunnel syndrome, among others. (*Id* at 9.)

The ALJ identified several other non-severe, medically determinable impairments but concluded that these additional impairments resulted in only minimal limitations to Gebhardt's ability to perform basic work. (*Id.* at 10.)

The ALJ determined that, although Gebhardt suffered medically determinable mental impairments from anxiety and depression, those impairments failed to prove severe. (*Id.*) The ALJ reached this conclusion by walking through "the four broad areas of mental functioning" set forth in the regulations governing evaluations of mental disorders. (*Id.*) The four areas of mental functioning consist of the following: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. (*Id.* 10-11.) The ALJ determined that Gebhardt exhibited mild impairments in each area but found that these impairments caused no more than minimal limitation in his ability to perform basic mental work activities. (*Id.*)

Step Three: The ALJ found that Gebhardt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, the Social Security regulations. (*Id.* at 12.)

Step Four: The ALJ determined Gebhardt's "residual functional capacity" and then evaluated whether it would allow Gebhardt to perform any past relevant work. (*Id.* at 14.) The ALJ followed the two-step process to determine Gebhard's residual

6

functional capacity. The ALJ first evaluated whether Gebhardt's impairments could produce his alleged symptoms. The ALJ then considered the intensity, persistence, and limiting effects of those symptoms and the resulting limitations on Gebhardt's potential work activities. (*Id.*)

The ALJ determined that Gebhardt's severe impairments could cause Gebhardt's alleged symptoms. (*Id.* at 16.) The ALJ concluded, however, that Gebhardt's "statements concerning the intensity, persistence, and limiting effects of [the symptoms]" did not prove "entirely consistent" with the evidence in the record. (*Id.*) The ALJ used identical language to discount Gebhardt's claimed symptom intensity in the first unfavorable decision issued on August 1, 2018. *Gebhardt v. Saul*, No. 4:19-cv-19-42-GF-BMM-JTJ (D. Mont.) (Doc. 6 at 51.) The ALJ explained in August 2018, that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* As in the August 2018, unfavorable decision, the ALJ again largely discredited Gebhardt's statements and determined that Gebhardt possessed the residual functional capacity to perform light work with certain restrictions:

> He can lift, carry, push, and pull 10 pounds frequently and 10 pounds occasionally. He can walk and stand about six hours in an eight-hour workday, with normal breaks and sit for six hours in an eight-hour workday, with normal breaks. He can occasionally reach overhead with the right

upper extremity and frequently handle and finger bilaterally. He should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, and work hazards. Normal breaks are defined as occurring every two hours with two breaks lasting at least 10 minutes and one lasting at least 30 minutes. He can understand, remember, and carry out simple, detailed, and complex tasks. He can maintain attention, concentration, persistence, pace for such for eight-hour workdays and forty-hour workweeks. He can tolerate interaction with supervisors, coworkers, and the public. He can tolerate usual work situations. He can tolerate changes in routine work settings.

(Doc. 7-1 at 14.) The ALJ determined, however, that Gebhardt's residual functional capacity would not allow him to perform any past relevant work. (*Id.* at 22.) The ALJ then had to proceed to Step Five.

Step Five: The ALJ at Step Four asked a relatively narrow question: whether a claimant's residual functional capacity would allow a claimant to engage in his past specific work as actually or generally performed. Step Five requires a broader analysis. The ALJ assessed whether, given Gebhardt's residual functional capacity, age, education, and work experience, he could perform any other work. (*Id.* at 22-23.) The ALJ engaged a vocational expert ("VE") to answer the question of "whether there were occupations that could be performed by an individual having the same age, education, past relevant work experience, and residual functional capacity as the claimant had through the date last insured." (*Id.* at 23.) The VE identified three jobs that would meet this definition: procurement clerk, expediter, and shipping

receiving clerk. (*Id.*) The ALJ, based on this information, determined that Gebhardt was not disabled.

Gebhardt now asks the Court to review the ALJ's unfavorable decision. (Doc. 2.) Gebhardt asks the Court to reverse for an award of benefits, or, in the alternative, to remand for further proceedings. (*Id.*) He contends the ALJ committed three errors: 1) the ALJ failed to offer sufficiently specific reasons for discounting Gebhardt's testimony and failed to identify specific medical records that contradicted his statements; 2) the ALJ improperly discounted the mental health opinions of reviewing expert David Klajic, Ph.D., reviewing physician William Fernandez, treating counselor Teresa Schmit, MSW, LCSW, and Gebhardt's treating physician; and 3) the ALJ failed to pose a complete hypothetical question to the VE by ignoring several of Gebhardt's impairments. (Doc. 12 at 8.)

## DISCUSSION

Gebhardt has contended that the ALJ erred in several ways. The Court agrees that the ALJ improperly discounted Gebhardt's testimony, formed an improper residual functional capacity assessment, and failed to present an accurate and complete hypothetical to the VE. The Court will remand the case for further proceedings.

**I.      Whether the ALJ offered sufficiently specific reasons for discounting Gebhardt's testimony**

9

Gebhardt contends that the ALJ improperly discounted his testimony regarding the intensity, persistence, and limiting effects of his alleged symptoms. (Doc. 12 at 18.) An ALJ may find a claimant not credible if the medical record contradicts the claimant's subjective testimony. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The Ninth Circuit requires an ALJ to provide "specific, clear and convincing reasons" to reject a claimant's testimony, however, once the ALJ has determined that a claimant's medically determinable impairments that might reasonably produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). The clear and convincing standard does not prove easy to meet: "it is the most demanding required in Social Security cases." *Id.* at 1015. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998). ALJs do not satisfy the "specific, clear and convincing reasons" standard when they "simply state[] . . . [a] non-credibility conclusion and then summarize[] the medical evidence supporting [the] . . . determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ's 2021 credibility analysis proves similar to that offered in the 2018 unfavorable decision. Gebhardt has claimed disability based upon a combined set of symptoms including asthma, bilateral total knee arthroplasty, obesity, atrial

fibrillation/coronary artery disease and cardiomyopathy, fibromyalgia, and carpal tunnel syndrome, among others. (Doc. 7-1 at 9.) The ALJ first reviewed Gebhardt's hearing testimony and found that Gebhardt's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 7-1 at 16.) The ALJ explained that Gebhardt's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 7-1 at 16.) The ALJ then proceeded through a summary of the medical evidence in the record. (Doc. 7-1 at 16-20.)

The ALJ's review does not connect any specific portions of Gebhardt's testimony to any specific evidence in the record, and the ALJ fails to explain which medical or other evidence undermines which of Gebhardt's testified complaints. (*Id.*) For example, the ALJ does not explain how her summaries of Gebhardt's carpal tunnel syndrome and osteoarthritis clinical examinations:

> An electromyography and nerve conduction study also revealed moderately severe left carpal tunnel syndrome and mild right carpal tunnel syndrome. However, it did not show any involvement in the abductor policis brevis. Treatment records further document complaints of tingling in the bilateral hands and fingers, as well as pain in the thumb that increased when driving and gripping. He also reported that he had worn braces at the computer, but that they did not help significantly. Earlier physical examinations revealed tenderness over the thumb CMC joints bilaterally, bilateral positive grind test, and bilateral

11

> positive extension and abduction stress tests on the right.
> However all fingers had full range of motion, normal
> strength, and intact sensation

(*Id.* at 16) (citations omitted), or:

> The claimant subsequently underwent a right thumb CMC
> arthrodesis in June 2020. Follow up appointments noted
> the claimant as doing well with minimal swelling. X-rays
> of the right thumb showed [] good alignment. Physical
> examinations also showed no tenderness to palpation of
> the bony prominences of the right thumb and good
> oppositional strength. The claimant also underwent a left
> thumb CMC arthrodesis in October 2020. A subsequent x-
> ray of the left thumb showed good alignment of the fusion
> site. Furthermore, at his five-week appointment,
> [Gebhardt rated his pain at level four out of ten (Doc. 7 at
> 1460)]. Examinations further showed no tenderness to
> palpation, good oppositional strength of the left thumb,
> and the ability to appose to the tip of the small finger

(*Id.* at 17), among others, contradict Gebhardt's testimony that, if "[he's] not doing

anything, [his] thumb feels pretty good" but that he struggles with the use of his

fingers and thumbs in everyday life—lifting or grabbing motions, picking up items

heavier than a can or bottle of soda, or writing for more than five minutes, for

example—and experiences pain, numbness, and loss of dexterity as a result. (Doc. 7

at 684-86.) The ALJ offers similar generalizations of the medical evidence when

discounting Gebhardt's statements about the symptoms from his right shoulder,

severe obesity, knee and back pain, asthma, and fibromyalgia conditions, among

others. (Doc. 7-1 at 15-20.)

The ALJ also offers no discussion of the Gebhardt's statements regarding his mental symptoms, including his anxiety, depression, and fear of social or public settings, which Gebhardt described as "almost terror" during his 2021, hearing. (Doc. 7 at 674.) She does not address in any fashion Gebhardt's testimony that his mental health conditions worsened between 2018 and 2021. The ALJ also mischaracterizes Gebhardt's "robust" activities of daily living. She states, for example, that Gebhardt in 2018 testified that he attended "camera club" and photography outings, but she omits evidence that, three years later, Gebhardt no longer engaged in those activities. *Compare* (Doc. 7-1 at 20) *with* (Doc. 7 at 690-91.) She concludes that Gebhardt was a "college student and . . . used a computer extensively during the relevant period" but fails to acknowledge that Gebhardt was not a college student in 2021 and his computer use had reduced to "pretty limited anymore . . . just, you know, pecking with . . . a finger." (Doc. 7-1 at 20); (Doc. 7 at 682.) She concludes from the hearing testimony that Gebhardt "is able to [take] walks and shop in stores" but fails to acknowledge Gebhardt's testimony that he manages to get out "once in a while" and doing so requires "build[ing] up the fortitude to just get out and go to the store, at a time when [he knows] there's not going to be very many people there, but that's about it." (Doc. 7-1 at 20); (Doc. 7 at 690.)

13

These general findings, coupled with the ALJ's omissions, do not constitute the clear and convincing reasons an ALJ must offer when rejecting a claimant's testimony. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). "[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ failed to set forth the specific allegations underlying Gebhardt's disability applications that she found not credible. The Court, without this required specificity, cannot determine whether the ALJ arbitrarily discredited Gebhardt's statements.

The Commissioner contends that the ALJ properly evaluated Gebhardt's complaints and supports this argument by restating much of the ALJ's summary. (Doc. 14 at 4-6.) The Commissioner then offers some of her own reasons in support of the ALJ's credibility determination: "Notably, Dr. Klajic observed that at his June 2020 appointment, [Gebhardt] 'did walk in with ease, no involuntary movements noted and he used no assistive device'" and "pt reports [Gebhardt] feels at least 75% improved; he can do a lot he couldn't do before such as walking faster and without a noticeable hobble, easier to get up from sitting from the couch." (Doc. 14 at 5.) These quotes, which do not necessarily conflict with Gebhardt's hearing testimony that his knee and lower leg problems occur after he has been "up" for "a while" and

14

walked further than one hundred feet, may offer a basis to discount portions of Gebhardt's testimony. The ALJ must articulate them, however. The Court will not piece together the medical and other evidence to draw inferences the ALJ did not. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ further compounded this error. "[I]n assessing [residual functional capacity], the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' . . . The [residual functional capacity] therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). The ALJ first accepted at Step Two that Gebhardt suffers from the mental impairments of anxiety and depression and explained that her evaluations of the "paragraph B criteria" "are not a residual functional capacity assessment." (Doc. 7-1 at 11.) The ALJ correctly articulated that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (*Id.*) The ALJ, between Steps Three and Four, then ignored her own assessment requirements and failed to discuss any of Gebhardt's mental impairments, their potential limitations in the residual functional capacity assessment, or a separate mental residual functional capacity. The ALJ offered neither a "detailed assessment" nor any explicit consideration of Gebhardt's mental impairments in forming the residual functional capacity. The ALJ

15

should have accounted for Gebhardt's mental impairments, whether severe or not, when determining his residual functional capacity. *See, e.g., Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009) (citing 20 C.F.R. §§ 404.1523, .1545)) This failure, combined with the ALJ's improper evaluation of Gebhardt's testimony, resulted in an erroneous residual functional capacity assessment.

## II.   Whether the ALJ improperly discounted the mental health opinions of reviewing expert David Klajic, Ph.D., reviewing physician William Fernandez, treating counselor Teresa Schmit, MSW, LCSW, and Gebhardt's treating physician

An ALJ evaluates three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). A treating physician's opinion generally carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* An ALJ may reject a treating or examining physician's opinion only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that

16

are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). Gebhardt argues that the ALJ erred in her consideration of several providers' opinions. (Doc. 12 at 22.) The Court agrees.

Dr. Klajic, a consultative expert, personally examined Gebhardt in June, 2020. (Doc. 7 at 1402.) Dr. Klajic's assessment included a mental status examination, clinical interview, clinical observations, and a review of Gebhardt's extensive medical history and records submitted by the Montana Division of Disability Determination. (*Id.*) Dr. Klajic identified that Gebhardt suffered from major depression, generalized anxiety disorder, and panic disorder. (*Id.*) Dr. Klajic found that Gebhardt's ability to understand, remember, or apply information and his ability to concentrate, persist, or maintain pace suffered no limitation. (*Id.* at 1407.) Dr. Klajic found that Gebhardt's ability to interact with others was markedly limited. (*Id.*) Dr. Klajic found that Gebhardt's ability to adapt or manage himself was moderately impaired. (*Id.*)

Dr. Bateen, a state agency psychological consultant, performed a psychiatric review technique required for assessing mental disorder listings and then assessed in detail Gebhardt's mental residual functional capacity. (*Id.* at 742-50); 20 C.F.R. pt. 404, subpt. P., app. 1. Dr. Bateen identified several limitations and explained that Gebhardt's mental residual functional capacity allowed him "to complete simple tasks in a timely manner without the need for inordinate supervision." (*Id.* at 750.)

17

Dr. Bateen also explained that Gebhardt would "do best at work that requires no more than limited contact with others, [but] he can maintain the brief and superficial contact with others required for simple task completion." Dr. Bateen finally opined that Gebhardt "has reduced stress tolerance suggesting that he will do best at low stress work where he need not make numerous decisions nor need respond to frequent changes." (*Id.*)

Dr. Fernandez completed the medical portion of Gebhardt's June, 2020, disability determination. (Doc. 7 at 749.) Dr. Fernandez analyzed Gebhardt's medical records and medical evidence and provided an assessment of Gebhardt's medically determinable impairments, including Gebhardt's depression and anxiety, determined that Gebhardt's statements regarding his mental and physical symptoms proved consistent with the evidence, and articulated a residual functional capacity that included certain exertional, postural, mental, and environmental limitations. (*Id.* at 742-49.) Dr. Fernandez relied upon Dr. Robert Bateen's 2020 psychiatric review technique and Dr. Klajic's 2020 consultation mental examination in assessing Gebhardt's mental limitations.

The ALJ offered Dr. Fernandez's opinion significant weight and incorporated all but the 2020 disability determination's mental limitations into her 2021 residual functional capacity assessment. (Doc. 7-1 at 20-21.) The ALJ failed to address Dr. Fernandez's opinion on Gerbhardt's mental impairments despite affording Dr.

18

Fernandez's opinion this significant weight, however. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [she] errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ failed to explicitly reject Dr. Fernandez's opinion regarding the nature of Gebhard's mental impairments and offered no reasons, let alone legitimate ones, for failing to incorporate Dr. Fernandez's mental limitations into her residual functional capacity assessment.

The ALJ similarly erred in her rejection of Dr. Bateen's 2020 opinion and Dr. Klajic's 2020 opinion. (The ALJ discussed these providers' opinions at Step Two.) State agency psychological consultants represent highly qualified experts in the evaluation of disability claims under the Social Security Act. Social Security Ruling (SSR) 17-2p, available at 2017 WL 3928306, at *3. Dr. Klajic, as an initial matter, represented the only consultant who personally examined Gebhardt, and he offered the ALJ the most recent assessment of Gebhardt's mental status. Dr. Bateen, in reevaluating Gebhardt in 2020, relied upon Dr. Klajic's examination report and Gebhardt's medical records extending through 2020. (*Id.* at 743.) The other non-examining sources to whose opinions the ALJ assigned significant weight last reviewed Gebhardt's mental status in 2016. (Doc. 7 at 117, 129.)

The ALJ used identical language to justify assigning minimal weight to Dr. Klajic's and Dr. Bateen's opinions: "[t]he claimant consistently presented overall

19

with a normal mood, adequate grooming, normal eye contact, alert, oriented, and cooperative. He also had intact memory and insight, normal affect and flow of thought, and no cognitive deficits." (Doc. 7-1 at 12.) The ALJ also offered an identical, single string citations to the record to support her conclusions. (*Id.*) The ALJ cited exclusively to twelve records from before January, 2018, to support her conclusion that Dr. Bateen's 2020 opinion deserved little weight and Dr. Klajic's 2020 opinion proved inconsistent "with all other medical evidence [in the 1654 page] record." (*Id.*) The majority of these twelve records appear to summarize primarily physical, rather than mental, examinations or clinical visits. This threadbare analysis does not provide the legitimate reasons required for the ALJ to either reject Dr. Klajic's or Dr. Bateen's 2020 opinions or credit the 2016 non-examining opinions over them. The ALJ committed errors in her assessment of Dr. Fernandez, Dr. Klajic, and Dr. Bateen for these reasons.

Gebhard also contends that the ALJ improperly discounted the opinion of Teresa Schmit, LCSW, Gebhardt's counselor. The Court determines that the ALJ properly afforded the opinion of Teresa Schmit, LCSW, on the ultimate issue of disability little weight. (Doc. 7-1 at 30.) While physicians may render opinions on the ultimate issue of disability, Schmit's opinion, as that of a social worker, does not enjoy the same deference. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 995, 1012 (9th Cir. 2010). Social workers represent "other sources" that an ALJ may

20

discount so long as she "provides reasons germane to each witness for doing so." *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017). The ALJ explained that Schmit offered an opinion on an issue reserved for the Commissioner and failed to offer functional assessment of Gebhardt's mental limitations. (Doc. 7-1 at 21); 20 C.F.R. § 404.1527(d). The ALJ was entitled to assign little weight to Schmit's conclusion regarding Gebhardt's ability to work with any regularity. The ALJ erred, however, in failing to address the nature and extent of Schmit's treatment relationship with Gebhardt in her evaluation of Schmit's other opinions. *See* 20 C.F.R. § 404.1527(f)(1), (c)(2). Schmit saw Gebhardt weekly from May, 2021 through the August, 2021 hearing. (Doc. 7 at 1639.) Schmit has observed Gebhardt more frequently and more recently than other treating sources in the record, and the ALJ failed to address this factor in her explanation of the weight given to Schmit's opinion.

III.   **Whether the ALJ posed a complete hypothetical to the VE.**

The ALJ, once she has determined a claimants' residual functional capacity, poses a hypothetical question to the VE. A proper hypothetical question should assist the VE to determine the type of work someone with a claimant's limitations and residual functional capacity hypothetically could perform. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The Court previously has discussed the ALJ's failures to properly account for the combination of Gebhardt's

21

impairments, including his mental impairments, in forming a residual functional capacity assessment. The Court also has identified the ALJ's inadequate evaluation of Gebhardt's statements regarding his symptoms, and the Court has explained the ALJ's failures regarding Dr. Fernandez, Dr. Klajic, and Dr. Bateen.

The ALJ failed to submit any form of mental impairment in the hypothetical posed to the VE as a result. The ALJ failed to present a complete hypothetical that properly incorporated Gebhardt's testimony regarding the intensity, persistence, and limiting effects of his symptoms. This omission constitutes legal error: "[i]f a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

## CONCLUSION

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The Court, in cases such as this, "where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," will remand for further proceedings. *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009). The Court directs the ALJ to properly credit Gebhardt's

testimony regarding his symptoms and reformulate a hypothetical that incorporates the full range of Gebhardt's mental and physical impairments.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is **REVERSED** and **REMANDED** for further proceedings.

2. The Clerk is directed to enter judgment accordingly.

DATED this 22nd day of March, 2023.


John Johnston
United States Magistrate Judge

23